IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

K.A.,

    Plaintiff,

v.                                                          CIV 17-0021 KBM/KK

BOY SCOUTS OF AMERICA, a congressionally
Chartered corporation, authorized to do business in
New Mexico, and SAGAMORE COUNCIL,
BOY SCOUTS OF AMERICA,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant Sagamore Council, Boy Scouts of America's Motion to Dismiss for Lack of Personal Jurisdiction, filed on January 30, 2017. *Doc. 7.* Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5, 8.* Having heard oral argument on this matter (*see Doc. 33*) and having considered the record, submissions of counsel, and relevant law, the Court finds that it would violate due process to exercise jurisdiction over Defendant Sagamore Council in this forum. Therefore, Defendant's motion is well-taken and will be granted.

**I.**     **Background**

K.A. (Plaintiff) is an adult male who resides in the state of Oregon. *Doc. 1-1* (*Compl.*) ¶ 1. At all times relevant to the events in the Complaint, Plaintiff was an unemancipated minor resident of the state of Indiana. *Id.* ¶ 2; *see also Doc. 18* at 1. Defendant Boy Scouts of America (BSA) is a congressionally-chartered not-for-profit

1

corporation registered with the New Mexico Secretary of State. *Compl.* ¶ 3. BSA's principal place of business in New Mexico is listed as the Philmont Scout Ranch (Philmont) in Cimarron, New Mexico. *Id.* Defendant Sagamore Council, Boy Scouts of America (Sagamore) is a not-for-profit corporation organized under the laws of Indiana with its principal place of business in Kokomo, Indiana. *Id.* ¶ 4.

BSA issues charters to smaller "non-profit organizations known as Local Councils." *Doc. 7-1* ¶ 6.[1] While BSA issues charters and provides Scouting materials to Local Councils, those Local Councils are separate organizations from the BSA with their own board of directors and financial statements. *See id.* ¶ 14. Local Councils, such as Sagamore, then support other, smaller, local groups that wish to establish "Chartered Organizations" through BSA. *See id.* ¶¶ 6-7; *see also Doc. 7* at 3.

Chartered Organizations organize and operate individual Scouting units. *See Doc. 7-1* ¶ 7. The Chartered Organizations are responsible for selecting adult leaders and meeting facilities and for providing a representative who will coordinate the Scouting activities within the organization. *Id.* ¶ 8. Chartered Organizations must also "appoint a local troop committee comprised of adult volunteers who are responsible for selecting and supervising the Scoutmaster and other troop volunteers." *Id.* ¶ 10. Chartered Organizations submit the names of potential volunteers to Local Councils. *Id.* ¶ 11. Local Councils, like Sagamore, cross-reference potential volunteers' names against a list of names of people who have applied to volunteer with the BSA but were

---

[1] Sagamore submitted a declaration from Mr. Christopher Mehaffey, Sagamore's Scout Executive/Chief Executive Officer, who provided a sworn statement explaining the BSA's organizational structure, the amount of control Sagamore exercises over Chartered Organizations and troops, et cetera. *See Doc. 7-1.*

2

rejected. *See Mot. Hr'g Tr.*[2] at 13:6-13. Sagamore also conducts criminal background checks on all potential volunteers the troop committees select. *Id.* ¶ 15. All volunteers must be registered with the BSA. *Id.* ¶ 11.

The Scoutmaster and Assistant Scoutmaster of each troop plan, organize, and supervise troop activities. *See id.* ¶ 12. "The selection of activities varies by troop, based on factors such as the scouts' interests; the volunteers' time, abilities, and willingness; and parents' approval, among other things." *Id.* ¶ 13.

Sagamore neither controls, nor "has the right to control, the Chartered Organizations or the activities of the local troops so long as they are consistent with BSA's program." *Id.* Sagamore, however, does help facilitate one scouting activity for some of the troops in its region: "[a]lmost annually, Sagamore Council organizes a Council Contingent, which is a group of youth from different units in Sagamore Council's region who desire to attend Philmont Scout Ranch in New Mexico." *Id.* ¶ 31. The Council Contingent allows youth from smaller units to combine in order to go to Philmont. *Id.* Sagamore helps facilitate the Contingent's trip by collecting funds and transmitting those funds to Philmont. *Id.* Sagamore does not make any other arrangements for the Council Contingent. *Id.*

From 1974-1977, when Plaintiff was approximately 10-14 years old, he was a member of the Boy Scouts of America Troop 512. *Compl.* ¶¶ 8, 15; *Doc. 18* at 1. Troop 512 was a Scouting unit organized by Beamer United Methodist Church (the Chartered Organization) in Kokomo, Indiana. *Compl.* ¶ 8; *Doc. 18* at 1. Troop 512 and its

---

[2] All citations to the Motion Hearing Transcript are to the court reporter's unofficial transcript. Page numbers are subject to change in the official version of the transcript.

3

Chartered Organization were part of Sagamore Council. *See Doc. 18* at 1. Randall Shafer was a Scout Leader for Troop 512. *Compl.* ¶ 8.

The Complaint alleges that in his capacity as Scout Leader, Shafer sexually abused Plaintiff on multiple occasions during that three-year period. *Id.* ¶ 15. "The sexual abuse occurred during Scouting-related meetings, events and outings." *Id.* "Among other locations, Shafer sexually abused Plaintiff in Arizona; Colorado; Indiana; Illinois; Michigan; Ohio; Utah; and New Mexico." *Id.* During the summer of 1976, Shafer took Troop 512 (including Plaintiff) on a month-long camping trip to several locations throughout the Southwest, including a week-long stop at Philmont in New Mexico. *Id.* ¶ 16. Plaintiff does not allege that the trip through the Southwest or the stop at Philmont was organized as a "Council Contingent." *See Compl.* Shafer allegedly abused Plaintiff at least six times while at Philmont. *Id.* ¶ 16. Plaintiff alleges injuries and damages from the abuse, but he also maintains that he did not remember the abuse until sometime after January 2014. *Id.* ¶¶ 22-24.

## II.     Legal Standard

Where, as here, the Court holds an evidentiary hearing on the issue of personal jurisdiction, the plaintiff carries the burden to "establish, by a preponderance of the evidence, that personal jurisdiction exists." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 n.4 (10th Cir. 2008) (citing *Dennis Garberg & Assoc., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) (internal citation omitted)).

"A New Mexico court may only exercise personal jurisdiction over a non-resident defendant if three conditions are satisfied." *McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1198 (D.N.M. 2013) (citing *Salas v.*

4

*Homestake Enter., Inc.*, 742 P.2d 1049, 1050 (N.M. 1987) (internal citation omitted)). "First, the defendant must have engaged in one of the acts enumerated in New Mexico's jurisdictional long-arm statute." *Id.* (citing N.M. Stat. Ann. § 38-1-16 (1978)). "Under the long-arm statute, a person submits himself to personal jurisdiction in New Mexico if he transacts any business in the state, or if he commits a tortious act within the state." *Id.* (citing N.M. Stat. Ann. § 38-1-16). "Second, the plaintiff's cause of action must arise from one of those acts." *Id.* (citing *Salas*, 742 P.2d at 1050). "Finally, the defendant must have minimum contacts with New Mexico sufficient to satisfy constitutional Due Process." *Id.* (citing *Salas*, 742 P.2d at 1050).

"New Mexico courts have repeatedly equated the first and third conditions." *Id.* "Because New Mexico's long arm statute extends the jurisdiction of New Mexico courts as far as constitutionally permissible, the inquiry into whether specific conduct falls under the statute becomes subsumed by the constitutional Due Process inquiry." *Id.* at 1198-99. "The question of personal jurisdiction over out-of-state residents involves more than a technical 'transaction of any business' or the technical 'commission of a tortious act' within New Mexico. The meaning of those terms, in our statute, is to be equated with the minimum contacts sufficient to satisfy Due Process." *Id.* at 1199 (quoting *Tarango v. Pastrana*, 616 P.2d 440, 441 (N.M. Ct. App. 1980) (internal citation omitted)). "To satisfy Due Process requirements, the defendant must have (1) sufficient minimum contacts with the forum state (2) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted)).

5

To satisfy the minimum contacts prong of the Due Process inquiry, Plaintiff must establish that the Court may exercise either general or specific jurisdiction over Sagamore. *See id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Only the exercise of specific jurisdiction is at issue in this case.

"To establish specific jurisdiction, the plaintiff must show that the defendant 'purposefully directed' [its] activities at residents of the forum, and that the plaintiff's injuries 'arise out of or relate to' those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation omitted)). "A defendant 'purposefully directs' activities in a forum where the defendant makes (a) an intentional action that was (b) expressly aimed at the forum state (c) with knowledge that the brunt of the injury would be felt in the forum." *Id.* (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1239-40 (10th Cir. 2011) (internal quotation omitted)). "This ensures that an out-of-state defendant is not bound to appear in the forum to account for merely 'random, fortuitous, or attenuated contacts' with the forum." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475 (alterations in original, internal citations omitted)).

If Plaintiff establishes minimum contacts, the Court must then turn to the second prong of the Due Process inquiry and "determine whether exercising personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987) (internal quotations omitted)). Courts examine several factors to determine whether jurisdiction is unreasonable, including:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual

relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (quotation and citations omitted).

### III. Analysis

Plaintiff raises two theories in his attempt to establish personal jurisdiction over Sagamore Council. First, Plaintiff argues that Sagamore purposefully availed itself of this forum by organizing the Council Contingent to attend Philmont and by collecting and transferring the Council Contingent's funds to Philmont. *Doc. 18* at 6-7. This purposeful direction, argues Plaintiff, is sufficient to establish minimum contacts with New Mexico and subject Sagamore to jurisdiction here. *See id.* Second, Plaintiff contends that Shafer acted as Sagamore's agent, and thus Sagamore is vicariously liable for Shafer's tortious conduct in New Mexico. *Id.* at 7-8.

Plaintiff brings four counts against both BSA and Sagamore: (1) Negligence/ Respondeat Superior; (2) Premises Liability; (3) Sexual Battery of a Child/Respondeat Superior; and (4) Intentional Infliction of Emotional Distress/Respondeat Superior. *Compl.* ¶¶ 25-65. Because "[p]ersonal jurisdiction is a 'claim-specific inquiry[,] . . . the Court must analyze each claim to determine whether the requirements for personal jurisdiction are satisfied." *Ski Racing Inc. v. Johnson*, No. 09-CV-1181 MCA/LAM, Doc. 16 Mem. Opin. & Order at *7 (D.N.M. July 31, 2010) (quoting *Seiferth v. Helicopeteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).

#### A. Exhibits and Discovery

As an initial matter, Sagamore objects to the exhibits attached to Plaintiff's response on the basis that they are not authenticated. *Doc. 27* at 1 (citing Fed. R. Evid.

901, 902). At the motion hearing, counsel for Plaintiff acknowledged that the exhibits are not authenticated but asserted that they can be authenticated in the event the Court allows jurisdictional-related discovery. *See, e.g., Mot. Hr'g Tr.* at 54:22-55:4. The Court agrees Plaintiff failed to authenticate the exhibits and will not consider them in ruling on this Motion. Further, the Court finds that even had Plaintiff authenticated the exhibits, the Court's decision would remain the same.

Plaintiff has requested jurisdictional-related discovery. *See id.* at 40:6-13; *see also Doc. 18* at 20. Jurisdictional-related "discovery is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *McManemy*, 2 F. Supp. 3d at 1195 (quotation omitted). The Court is not required, however, "to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *Id.* (quoting *Martinez v. Cornell Corr. of Tex.*, 229 F.R.D. 215, 218 (D.N.M. 2005)). "This means that before a court grants discovery, a plaintiff must first provide some reasonable allegations on which to base the pursuit of discovery." *Id.* The Court finds Plaintiff has failed to provide such reasonable allegations and denies the request for jurisdictional-related discovery.

### B. Count I

In Count I (negligence), Plaintiff asserts that Sagamore breached its duty to Plaintiff by:

> (a) Failing to exclude Shafer as a Scout Leader;
> (b) Failing to restrict Shafer's activities with Scouts, including K.A.;
> (c) Failing to notify parents of Scouts, including K.A.'s parents, about Shafer and about the risk and dangers of sexual abuse;
> (d) Failing to train Scout Leaders, parents, and Scouts in how to recognize, report and prevent child abuse; and
> (e) Failing to implement reasonable child abuse prevention policies.

*Compl.* ¶ 32. Sagamore argues that any negligence as alleged in Count I would have occurred in Indiana, not in New Mexico. *Doc. 7* at 16-17. The Court agrees.

Plaintiff nevertheless argues that the Court has specific jurisdiction over Sagamore because it purposefully directs its activities toward New Mexico by helping organize and transfer funds so that scouts from smaller Chartered Organizations may attend Philmont as part of a "Council Contingent." *Doc. 18* at 5-6. As Sagamore points out, however, the test to establish jurisdiction is two-pronged: not only must Plaintiff establish that Sagamore "'purposefully directed' [its] activities at residents of the forum," Plaintiff must also show that his "injuries 'arise out of or relate to' those activities." *McManemy*, 2 F. Supp. 3d at 1199 (quotation omitted). In other words, any injuries Plaintiff incurred from the negligence described in Count I must arise out of or relate to Sagamore's activities helping organize the Council Contingent.

Sagamore argues that even assuming its actions in organizing Council Contingents qualifies as purposeful direction to residents of New Mexico, Plaintiff has not established that his injuries in Count I arose out of or relate to those specific actions. *Doc. 7* at 17-18. Once again, the Court concurs. Plaintiff does not assert that the injuries he incurred due to Sagamore's negligence in Count I (i.e., failure to exclude Shafer as a Scout Leader, failure to train Scout Leaders about child abuse, etc.) arose out of or are related to Sagamore's actions in organizing Council Contingents. Indeed, Plaintiff does not allege that he went to Philmont as part of a Council Contingent; rather, Plaintiff alleges that he was abused in 1976 when "**Shafer took Troop 512** . . . on a month-long camping trip" across many states that included a week-long stop at the Philmont Ranch in New Mexico. *Id.* ¶ 16 (emphasis added). Consequently, any negligence on the part of

9

Sagamore as described in Count I, and the resulting injuries to Plaintiff because of that negligence, is unrelated to Sagamore's conduct in collecting and transmitting funds so that scouts from smaller troops could go to Philmont. The Court finds Plaintiff has not met his burden to show minimum contacts to establish specific personal jurisdiction with respect to Count I.[3]

### C. Counts II, III, and IV

Plaintiff advances an agency theory to assert minimum contacts for purposes of Count II (premises liability),[4] Count III (sexual battery of a child), and Count IV (intentional infliction of emotional distress). *Doc. 18* at 7-14. New Mexico's "long-arm statute provides that the actions of an agent are imputed to the principal for the purposes of personal jurisdiction." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 42 P.3d 1221, 1231 (N.M. Ct. App. 2002) (citing N.M. Stat. Ann. § 38-1-16(A) ("Any person . . . who in person or through an agent does any of the acts enumerated . . . submits himself . . . to the jurisdiction of the courts of this state . . . .")). "The existence of agency is a question of fact." *Santa Fe Techs., Inc.*, 42 P.3d at 1232 (citation omitted).

"An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair, or does some service for the principal, with or without compensation." *Freeman v. Fairchild*, 340 P.3d 610, 616 (N.M. Ct. App. 2014) (quoting

---

[3] Plaintiff's agency theory does not apply to Count I, as the conduct described is specifically that of Sagamore and BSA, not Shafer.

[4] At the motion hearing, the Court asked if Plaintiff was bringing the premises liability claim against both Defendants, or only against BSA. *See Mot. Hr'g Tr.* at 54:11-14. Plaintiff's counsel responded that the claim is against both Defendants, "because premises liability could be the owner or occupant." *Id.* at 54:15-21. Presumably, the occupant was Shafer, who Plaintiff alleges is Sagamore's agent.

10

*Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 265 P.3d 720, 725 (N.M. Ct. App. 2011) (alteration in original, internal citations omitted). Authority may be actual or apparent. *See Barron*, 265 P.3d at 725 (citation omitted).

"[A]ctual authority is determined in light of the principal's 'manifestations of consent' to the agent . . . ." *Romero v. Mervyn's*, 784 P.2d 992, 996 (N.M. 1989) (quoting *Restatement (Second) of Agency* § 8 (1958)). "Apparent authority arises from manifestations by the principal to the third party and can be created by appointing a person to a position that carries with it generally recognized duties." *Barron*, 265 P.3d at 725 (quoting *Diversified Dev. & Inv., Inc. v. Heil*, 889 P.2d 1212, 1218 (N.M. 1995) (internal quotation omitted)). "A principal is bound by the acts of his or her agent within the agent's actual designated authority and is also bound by the acts of the agent that the principal 'holds the agent out to the public as possessing.'" *Id.* (quoting *Fryar v. Emp'rs Ins. of Wausau*, 607 P.2d 615, 618 (N.M. 1980) (internal quotations omitted). "Furthermore, 'a principal . . . is responsible for the acts of the agent when the principal has clothed the agent with the appearance of authority.'" *Id.* (quoting *Romero v. Mervyn's*, 784 P.2d 992, 996 (N.M. 1989).

Plaintiff argues that the following allegations demonstrate Shafer was Sagamore's agent: (1) volunteers must be submitted to Sagamore; (2) Sagamore cross-references potential volunteer names against a list of banned volunteers and also performs a background check on potential volunteers; (3) Sagamore transmits volunteer names to BSA; (4) Sagamore helps organizations obtain a charter and provides training and resources to Chartered Organizations; (5) Sagamore "accepted Randall Shafer as Scout Leader"; (6) Sagamore "authorized and empowered Shafer to perform all duties

of a Scout Leader including the authority and power: to provide instruction, counseling, moral guidance, and physical supervision of boys participating in Boy Scout programs and activities; to enforce the rules governing the boys' participation; and to undertake other duties"; and (7) Sagamore and BSA "retained the right to control the means and methods used by Scout Leaders, including Shafer, in fulfilling these duties . . . ."[5] *Compl.* ¶¶ 8-9; *Doc. 18* at 9-14. Plaintiff never specifies whether he believes Shafer had actual or apparent authority. Ultimately, the Court finds Plaintiff fails to show that Shafer was Sagamore's agent under either theory.

To overcome Plaintiff's allegations, Sagamore provided a sworn statement from Mr. Mehaffey, who details the hierarchy of the BSA and discusses the amount of control Sagamore retains over Chartered Organizations and troops. *See Doc. 7-1*. Mr. Mehaffey states that Sagamore neither controls, nor "has the right to control, the Chartered Organizations or the activities of the local troops so long as they are consistent with BSA's program." *Id.* ¶ 13. Sagamore did not select Shafer to be a Scout leader, nor did Sagamore supervise Shafer once he became a leader. *Id.* ¶ 15. In fact, it was the local Chartered Organization (Beamer United Methodist Church) that would have appointed a local troop committee, which would have been responsible for selecting and supervising Shafer as a troop volunteer. *Id.* ¶ 10.

Plaintiff offered no evidence – either admissible or inadmissible – that contradicts Mehaffey's sworn statement. Nor did Plaintiff tell the Court "what specific documents [he] would have sought in discovery" that would help establish personal jurisdiction. *See*

---

[5] Plaintiff made several other allegations relating to evidence of an agency relationship, but the Court will not consider allegations related to the unauthenticated exhibits attached to Plaintiff's Response.

*Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 104 (10th Cir. 2012) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010)). Plaintiff jumps to the legal conclusion in his Complaint that Shafer was Sagamore's employee (*see Compl.* ¶ 17), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal citations omitted)). Ultimately the Court finds that Plaintiff's mere speculations are not sufficient to establish by a preponderance of the evidence that Shafer was Sagamore's agent; hence, Plaintiff has not demonstrated that Sagamore has sufficient minimum contacts with this forum. *See Dudnikov*, 514 F.3d at 1070 n.4 (citation omitted).

### D. Exercising jurisdiction would be unreasonable.

Even if Plaintiff had successfully demonstrated minimum contacts with New Mexico, exercising jurisdiction over Sagamore would not "comport with 'fair play and substantial justice'" for any of Plaintiff's claims. *See Burger King Corp.*, 471 U.S. at 476 (quotation omitted). Once minimum contacts were shown, it would be Sagamore's burden "to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks and citation omitted). In examining the five factors, the Court finds Sagamore has met its burden to show that exercising jurisdiction would be unreasonable. *See id.*

#### 1. Burden on the Defendant

Because the parties and witnesses come from several different states, travel will be necessary no matter where the case is heard. *See Docs. 7* at 19; *18* at 15. It was the

13

Plaintiff's choice, however, to file the case in New Mexico. Consequently, the burden on Sagamore is understandably heavier, as it resides in Indiana and it did not choose to litigate in this forum.

### 2. New Mexico's interest in resolving the dispute

"New Mexico may have a substantial and legitimate interest in adjudicating a claim" of a minor who was injured in the state. *See Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006) (citation omitted). The State of Indiana, however, "has an equally strong, if not greater, interest in" adjudicating a claim by a plaintiff who was a resident of Indiana at the time of the events, against a not-for-profit organized under the laws of Indiana. *See id.*

### 3. Plaintiff's interest in receiving convenient and effectual relief

Plaintiff argues that New Mexico is more convenient for him, because Indiana's "repressed memory" exception to the statute of limitations is more restrictive than New Mexico's exception and may therefore bar his claims. *Id.* The Court finds this unpersuasive for at least three reasons. First, the Court notes that Plaintiff neither cited N.M. Stat. Ann. 1978 § 37-1-30 (1995), the statute of limitations for claims arising from child sexual abuse, nor specifically discussed whether the statute of limitations on his claims would be tolled pursuant to that statute.[6] *See Compl.*; *Doc. 18*.

---

[6] Pursuant to section 37-1-30, "[a]n action for damages based on personal injury caused by childhood sexual abuse shall be commenced by a person before the latest of" either "(1) the first instant of the person's twenty-fourth birthday; or (2) three years from the date that a person first disclosed the person's childhood sexual abuse to a licensed medical or mental health care provider in the context of receiving health care from the provider." N.M. Stat. Ann. § 37-1-30(A). Because Plaintiff is approximately 53 years old (*see Compl.* ¶ 16), he would need to rely on the second exception. Plaintiff has not alleged that he disclosed the abuse to any health care provider within the past three years.

14

Second, while it is clear Plaintiff would prefer the Court apply New Mexico substantive law to this case, the Court is not convinced New Mexico law *should be* applied. New Mexico courts employ the doctrine of *lex loci delicti commissi* – the "place of the wrong" approach – to choice of law questions in tort actions. *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1257 (D.N.M. 2010) (quoting *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006) (internal citation omitted)). "The *lex loci delicti* rule defines the state where the wrong occurred as 'the state where the last event necessary to make an actor liable for an alleged tort takes place.'" *Id.* (quoting *Restatement (First) Conflicts of Law* § 377 & cmt. a (1934); citing *Zamora v. Smalley*, 358 P.2d 362, 363 (1961)). In his Complaint, Plaintiff alleges he was abused in many states, including Indiana. In discussing this issue at the motion hearing, the Court pointed out that the last event necessary to make Sagamore liable for any abuse likely occurred in Indiana, where it appears that Shafer first abused Plaintiff. *See Mot. Hr'g Tr.* at 28:25-29:24. Counsel for Plaintiff agreed[7] and moved to amend the Complaint, so that the only addressable abuse in this case would be that which occurred in New Mexico.[8] *See id.* Besides the obvious difficulties in how a jury could separate out the impact of alleged abuse that occurred in other states both before and after Plaintiff's Philmont experience, the Court finds that such a request smacks of forum shopping and denies the motion to amend.

---

[7] Specifically, counsel for Plaintiff said the allegations of abuse from seven different states were included "to get past the *Iqbal/Twombly* hurdle of possibilities." *Mot. Hr'g Tr.* at 29:4-10.

[8] Plaintiff's counsel admitted that transferring the case to Indiana – even if New Mexico's substantive law were applied – would be deleterious to Plaintiff's claims. *See id.* at 51:17-52:14. If an Indiana court hears the case, Indiana procedural law will apply, regardless of what substantive law applies. *Id.* Consequently, it appears that Indiana's statute of limitations will bar Plaintiff's claims. *Id.*

Third, there is "no particular reason to believe that due process requires [Plaintiff] to be able to file his suit in a single forum in order to receive convenient and effective relief." *Trujillo*, 465 F.3d at 1221-22. "To the extent that [Plaintiff] must file separate lawsuits in two forums, the New Mexico defendant[] will be held accountable for [its] conduct in New Mexico, and the [Indiana] defendant[ ] will be held accountable for [its] conduct in" Indiana. *Id.* at 1222 (citation omitted).

### 4. The most efficient resolution of controversies

With respect to the fourth factor, as to Sagamore Council, Indiana "seems to be the most efficient place to litigate the dispute[,] because the wrong[s] alleged" in Counts I, III, and IV – negligence in allowing Shafer's participation and in failing to train and implement child abuse prevention policies, and at least some of the incidents of abuse – occurred in Indiana. *See Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000).

### 5. The shared interest of the states

Finally, the Court finds Indiana's interest in regulating and deterring conduct by a not-for-profit in its borders to be substantial. Moreover, Indiana's interest in deterring criminal conduct by an Indiana resident that occurred both inside and outside of its borders, as well as its interest in protecting its own statutes of repose, weigh heavily in favor of an Indiana forum.

Upon balancing these five factors, the Court finds that exercising jurisdiction over Sagamore Council for any of Plaintiff's claims would violate due process.

**IV. Conclusion**

The Court finds that Plaintiff has failed to establish Sagamore has minimum contacts sufficient for the Court to exercise specific jurisdiction over it for purposes of Count I. Plaintiff asserted an agency theory to assert minimum contacts for Counts II, III, and IV, but Plaintiff has failed to demonstrate that Shafer acted as Sagamore's agent. Moreover, Sagamore demonstrated that exercising jurisdiction over it for any claim would not comport with traditional notions of fair play and substantial justice.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant Sagamore Council, Boy Scouts of America's Motion to Dismiss for Lack of Personal Jurisdiction (*Doc. 7*) is **granted**. Plaintiff's claims against Sagamore Council are **dismissed without prejudice**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent